*1000 OPINION.
Smith :
In Docket No. 8543, covering the years 1918 and 1919, the petition alleges errors on the part of the Commissioner as follows:
(4) The determination * * * is based on the following errors:
(a) The Commissioner of Internal Revenue failed to allow as a deduction from gross income the loss amounting to $41,711.57 claimed by taxpayer as obsolescence and loss of useful value on structure and machinery.
(b) The Commissioner failed to allow as a deduction from gross income a sufficient amount to reasonably cover the loss sustained by the company by reason of wear and tear and obsolescence.
In Docket No. 19459, covering the year 1920, the petition alleges errors as follows:
4. The determination * * * is based upon the following errors:
(a) The Commissioner failed to allow as a deduction an amount sufficient to cover the losses due to depreciation and to obsolescence and loss of useful value of structures and machinery.
*1001 (b) The amount used, in computing gross income, as the inventory as of December 31, 1920, was erroneous inasmuch as the amount included therein for certain goods hereinafter described was greatly in excess of the actual market value of such goods at that date.
(c) The total of sales used in computing gross income included billings to customers of large quantities of unmarketable goods manufactured by an experimental process, which was a failure, which goods the customers rejected and returned to the petitioner, so that the sales were never consummated and the assumed profit on the same never had any actual existence, and the cost of manufacture was almost or quite a total loss.
This petition further alleges that in lieu of a deduction on account of obsolescence of structure and machinery in the amount of $41,-711.57 claimed in the petition filed for the years 1918 and 1919 (Docket No. 8543), there should be allowed as a deduction from gross income on account of obsolescence for the years 1919 and 1920 the sums of $20,420.71 and $5,877.82, respectively.
After the petitions were filed the petitioner prepared a statement (Table No. 1, supra) showing the property on which a deduction for obsolescence is claimed, together with its date of acquisition, cost, percentage of depreciation reserve from date of erection to January 1, 1919, amount of depreciation from date of acquisition to January 1, 1919, and net book value on January 1, 1919. At the hearing counsel for the petitioner withdrew assignment of error (4) (b), Docket No. 8543, and stated that the above-mentioned statement set forth specifically and in detail the subject matter of allegations (4) (a) Docket No. 8543, and 4. (a) Docket No. 19459. He also asked that the various amounts claimed as deductions for obsolescence in the two petitions be subject to amendment so as to conform to the facts that would be introduced in evidence.
Counsel for the respondent stated that his understanding of peti-, tioner’s position with respect to claimed deductions on account of depreciation and obsolescence was that there should be deductions for 1919 and 1920 on account of obsolescence of property properly spread to the two years, and also that there should be allowed in one or both of the years losses on account of definite abandonment-of property.
Having given due consideration to the statements appearing in the petitions and in the petitioner’s brief, and having considered such allegations in the light of the position taken by counsel for both parties at the hearing, we take it that the issues before us are, (1) whether the petitioner is entitled to a deduction from gross income for each of the years 1919 and 1920 on account of losses due to obsolescence and loss of useful value of structure and machinery; (2) whether the value of the closing inventories for the year 1920 should be adjusted on account of defective goods contained therein; and (3) whether the accounts receivable account as of December 31, 1920, should be adjusted on account of billings to customers contained *1002 therein covering defective goods which were returned after the close of the taxable year.
The allegation of petitioner that the respondent erred in refusing to allow certain deductions for obsolescence being common to both of the appeals considered here, they were, on motion of the petitioner which was duly granted, consolidated and heard together. This issue, being the only one raised with respect to the year 1919, will be disposed of first. No issue was raised with respect to the year 1918 and the Commissioner having determined an overassessment for that year the Board is without jurisdiction of so much of the appeal as pertains thereto. Appeal of R. P. Hazzard, Co., 4 B. T. A. 150, and Appeal of Cornelius Cotton Mills, 4 B. T. A. 255.
Section 234(a) of the Revenue Act of 1918 provides:
That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:
*******
(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise;
*******
(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.
The property covered by petitioner’s claim consists of (1) machinery used in the manufacture of photographic film base, (2) machinery used in the manufacture of celluloid, and (3) a portion of the building in which the manufacture of film base is carried on. While neither the record nor petitioner’s brief clearly sets forth upon which of the above-quoted provisions of the statute the petitioner bases its claim for a deduction for the year 1919, no evidence was presented to show that during that year it sustained losses within the meaning of subdivision (4), supra. On the contrary, the evidence is clear that there was no discarding or abandonment of the property in question during 1919. Consequently it is apparent that no deduction for the year 1919, based upon the provisions of section 234(a) (4) of the Revenue Act of 1918, would be allowable.
We conclude, therefore, that petitioner’s claim for a deduction for the year 1919 is based upon the provisions of subdivision (7) of section 234(a) of the Revenue Act of 1918. This conclusion is supported by the introduction of testimony at the hearing to show (1) that plans were made in 1919 which would necessitate the abandonment in 1920 of the wheels installed in 1909 and 1910 for use in the manufacture of film base, together with certain complementary machinery; (2) that changes were made in the formula employed in the manufacture of celluloid in 1919 which would necessitate the abandonment in 1920 of the machinery used in making celluloid; and (3) that the plans made in 1919 for the abandonment in 1920 of a portion of the machinery used in making film base would also *1003 result in the abandonment of that part of the building in which such machinery was housed.
As a result of years of experimentation and development by the petitioner a type of machinery peculiarly adapted to the manufacture of film base was evolved. The first installation of such machinery was made in 1911 and as demand for film base increased subsequent installations of the same general type were made in 1914 and in 1920. While the recommendation of the superintendent of film manufacture, dated October 15, 1919, contemplated the removal of the wheels installed in 1909 and 1910, as well as the installation of additional wheels of the same type as those installed in 1911 and 1914, the president, under date of December 2, 1919, authorized only the installation of the additional wheels. He did not approve that portion of the recommendation relative to the removal of the wheels installed in 1909 and 1910.
The machinery in use prior to 1911 was either discarded or abandoned in 1920, so that to-day all film base is made by the use of machinery installed in 1911, 1914, and 1920. It is evident that long prior to 1919 the petitioner considered the type of machinery erected in 1911 was best suited to its needs and the superintendent of film manufacture testified that in his opinion the machinery installed in 1909 became obsolete in 1911 when the new type of machinery was erected.
Eelative to the machinery used in the manufacture of celluloid, the testimony is clear that when the formula was changed in 1919 it became apparent that the use of a substitute in the place of camphor would necessitate the use of machinery different from that previously employed in making celluloid. It is equally clear, however, that a wide divergence existed in the opinions of various plant executives relative to the advisability of using the camphor substitute on a large scale. - The management relied on the assurances of the chief chemist that the camphor substitute had been perfected, and ordered the superintendent of manufacture to employ the new formula to a large extent. The superintendent protested against the use of a substitute, claiming that its use would result in the production of an inferior product. Due to the fact that use of the substitute did result in the production of inferior celluloid its use was discontinued in the latter part of 1919, and it was not until the latter part of 1920 that the use of a substitute was resumed. Consequently, it does not appear that in 1919 the petitioner definitely knew that this machinery would be subsequently superseded by other machinery adapted to the manufacture of celluloid in which a substitute for camphor was used, or that the machinery in question became obsolete in that year.
While certain plans and changes affecting both the manufacture of film base and celluloid were made in 1919 which occasioned the *1004 abandonment in 1920 of certain machinery used therein, the evidence does not show that such machinery and that portion of the building in which it was housed became obsolete in 1919. Nor has the petitioner alleged that the respondent committed error in computing the allowance for exhaustion, wear and tear of its property with respect to the year 1919. No deduction, therefore, in addition to that allowed by the respondent can be allowed for that year under the provisions of section 234(a) (7) of the Revenue Act of 1918.
The next question for determination is the amount of the loss, if any, deductible from gross income for the year 1920 as a result of the discarding of certain machinery and equipment. The evidence shows that the wheels had no value for any purpose whatever after they were dismantled in 1920. The evidence also shows that the machinery and equipment which was an integral part of the manufacture of film base connected with those wheels was also valueless at the date of abandonment in 1920. It also shows that the machinery left in the converting department (items 14, 15 and 16, Table 1) was valueless at the date discarded in 1920. Petitioner is entitled to deduct from the gross income of 1920 the depreciated cost of these assets. Monroe Cotton Mills v. Commissioner, 6 B. T. A. 172, and cases cited therein. Although the use of the machinery and equipment designated as items 17, 18, 19 and 20 (Table 1), was discontinued in 1920, the evidence does not show that these assets were valueless at that date. One witness testified that the Downingtown beating engine and the Miller duplex beating engine had a value of approximately $650 in 1927 and that the value in 1920 was not in excess of that amount. 'The latter engine was almost new. A discontinuance of the use of machinery alone does not prove a loss in respect of the machinery. Upon the evidence the claim of the petitioner for a loss deduction in respect of these assets is not sustained.
With respect to a loss of seven-sixteenths of the cost of the* building in which the discarded film wheels were located, W. F. Crawford, a witness for petitioner, testified as follows:
Q. Mr. Crawford, you have testified that this property, this particular equipment and structures, too, because the structures were no longer of value, were abandoned February 8, 1920?
A. Yes.
Q. What do you consider was the value of these structures, and that equipment, as of February 8, when you permanently abandoned it?
A. For the purpose of making film those wheels were of no value. By cutting the building, ripping out partition walls and foundations and cutting larger openings in the outside wall, it would be possible to install the large wheels. That was contemplated as part, of this project.
Q. Would the cost justify the expense?
A. That is an open question, because of the fact that concrete was used in part of the structure and was heavily reinforced. I am not sufficiently expert *1005 as a building designer to state whether or not it would pay, because of the handicaps that would be involved in getting these tremendously heavy machines in place through the side wall.
Q. So that substantially as they stand — even to-day they have no value?
A. They are of no value for the purpose for which they were erected.
Q. And since they occupy the structure, the structure is of no value; is that correct?
A. That is correct.
After carefully weighing this evidence we conclude that the use of this portion of the building for the purpose for which it was erected was terminated in 1920 and not that it became useless for all purposes and was abandoned in that year as valueless. The claim of petitioner for the deduction of this loss is likewise not sustained.
From the evidence submitted there can be little doubt that petitioner’s inventory on December 31, 1920, contained a great quantity of defective material which had been erroneously classified as “ firsts ” and “ seconds,” resulting in an over-valuation of the inventory. Nor can there be much doubt that the reinspection of the material contained in the inventory together with the method employed in reclassifying it enabled the petitioner to determine the proper grade for each kind of material contained therein. Since the inventory had been originally valued at cost or market, whichever was lower, we are of the opinion that the petitioner was entitled to revalue it by assigning to the reclassified material the corresponding unit costs or market values employed in the original valuation, and that the deficiency for the year 1920 should be recomputed on the basis of the reclassified inventory. Appeal of Champion Stove Co., 1 B. T. A. 656.
The third issue relates to the right of petitioner to reduce the amount of its accounts receivable account as of December 31, 1920, in the sum of $128,379.21. This amount was reflected in the accounts receivable account as at December 31, 1920, and represents the value of defective goods returned in the first four months of 1921 but which had been sold and delivered in the year 1920. The evidence shows that returns of defective goods, both in the latter part of 1920 and in the early part of 1921, were greatly disproportionate to normal returns for a like period in prior years, and a firm of certified public accountants estimated shortly after the close of the year 1920 that the accounts receivable account as at December 31, 1920, reflected approximately $100,000 worth of goods which, in all probability, would be returned.
The question as to the propriety of accruing a liability that, is wholly anticipatory has been before us on numerous occasions and we have held that the accuracy with which the amount of the liability may be predetermined does not affect the question, which must be *1006 answered solely in the light of whether the liability is certain or contingent. In the instant case, as in the Appeal of Morrison-Ricker Manufacturing Co., 2 B. T. A. 1008, none of the goods were returned in the taxable year. The decision in that case is controlling here and no reduction of the accounts receivable account as of December 31, 1920, may be allowed.
Keviewed by the Board.

Judgment will be entered on 15 days’ notice, under Rule 50.

MtjRdock concurs in the result.
Sternhagen dissents in part.
Phillips dissents on the first point.